**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-02800-REB-CBS

ROGER SCHANDEL and
LORI SCHANDEL,

    Plaintiffs,

v.

DARLENE A. SIEBERT, and
QWEST PENSION PLAN,

    Defendants.

## ORDER AFFIRMING DECISION OF PLAN

**Blackburn, J.**

This matter is before me on the **Plaintiffs' Brief In Support of Claim for Benefits** [#30],[1] filed August 15, 2013. The defendants filed responses [#32 & #49] and the plaintiffs filed a reply [#50]. I affirm the decision of the Qwest Pension Plan, now known as the CenturyLink Pension Plan.

### I. JURISDICTION

I have jurisdiction over this matter under 29 U.S.C. § 1132(e) (authority to review denial of benefits under an ERISA plan).

### II. BACKGROUND

This case concerns the pension benefit of the plaintiff, Roger Schandel, as paid by the Qwest Pension Plan (the Plan), which is a named defendant. Defendant Darlene

---

[1] "[#30]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

Siebert is the former wife of Mr. Schandel.  The Plan is paying a portion of the pension benefit of Mr. Schandel to Ms. Seibert under the terms of a Qualified Domestic Relations Order (QDRO) and the terms of the Plan.  Mr. Schandel claims the Plan is paying Ms. Seibert more than she is entitled to under the terms of the Plan, the QDRO, and the terms of a Mandatory Portability Agreement.

### A.  History of Pension Benefits of Mr. Schandel

Some factual background is necessary to understand this dispute and its resolution. During the periods listed below, Mr. Schandel was employed by Bell System companies or their successors:

- June 6, 1966 through December 31, 1983 - Pacific Bell and Mountain Bell;

- January 1, 1984 through September 14, 1991 - AT&T; and

- September 15, 1991 through October 1, 2008 - US WEST/Qwest.

Both of the companies with which Mr. Schandel was employed from 1966 through 1983 were impacted by the 1983 divestiture of AT&T.  Prior to divestiture, Pacific Bell and Mountain Bell, among other companies, entered into a Mandatory Portability Agreement (MPA).  [#36] AR 00038 - 00164.  The MPA preserves benefits of employees who move between companies covered by the MPA.  All of the companies listed above for which Mr. Schandel worked between 1966 and 2008 are covered under the terms of the MPA.  The MPA describes how the service of an employee will be credited to determine term of employment, vesting, and for other purposes, when the employee moves from one MPA company to another.  [#36] AR 00062-00067.  The MPA also describes how the obligation of paying an employee pension and the assets funding the pension are transferred in such circumstances.  AR 00078-00088.  The MPA explicitly excludes liability to third parties, such as the plaintiffs, stating:

2

> This Agreement shall not provide third parties including any covered employee, with any remedy, cause, liability, reimbursement, claim of action or other right in excess of those existing without reference to this Agreement.

[#36], AR 00119.

When the assets of the Bell System Plan for Employees Pensions, Disability Benefits and Death Benefits were divided among the retirement plans of the various entities that were parties to the MPA, the US West Pension Plan succeeded to the liability for the pension of Mr. Schandel. [#37], AR 00169.  Each time Mr. Schandel transferred among the companies listed above, his service credits and accrued pension benefit were transferred to the hiring company under the terms of the MPA. [#37], AR 00169.  The Qwest Pension Plan succeeded to that liability when Qwest and US West, Inc. merged.  At that time, the US West pension Plan was renamed the Qwest Pension Plan. [#37], AR 00169.

Mr. Schandel retired in October 2008.  The Qwest Pension Plan managed the retirement benefits of Mr. Schandel when he retired.  He elected to receive his pension benefit as a 100% joint and survivor annuity with his current wife, Lori Schandel, as the beneficiary. [#35], AR 00027 - 00031.  Effective October 31, 2008, the Plan began to pay to Roger and Lori Schandel a monthly annuity of 2,846.95 dollars. [#35], AR 00034 - 00036.

In 2011, Qwest merged with CentruyLink, Inc., and the Plan was renamed the CenturyLink Pension Plan.  The CenturyLink Employees Benefits Committee became the plan administrator. [#41], AR 00374 - 00375.

3

### B.  Terms of the Qualified Domestic Relations Order

On February 16, 1966, just before Mr. Schandel began his long span of employment with Bell system operating companies and their successors, Mr. Schandel and Ms. Siebert were married.  They remained married until April 27, 1981, when they separated.  As a result of their dissolution of marriage, Mr. Schandel and Mrs. Siebert are parties to a Qualified Domestic Relations Order (QDRO) entered by the Los Angeles Superior Court on December 10, 1982.  [#39], AR 00269 - 00271.  The QDRO provides:

> 15. (a) Petitioner [Mr. Shandel] shall have the primary responsibility to notify respondent [Mrs. Siebert] on the entry into pay status of petitioner's accrued benefit under the Bell System Plan for Employees Pensions Disability Benefits and Death Benefits (hereinafter the "Plan"). The Plan shall have secondary responsibility to so notify respondent.
>
> (b) The Plan shall pay to respondent upon the commencement of petitioner's accrued benefit under the Plan a sum equal to a fraction of each payment to which petitioner is entitled under the Plan. Said fraction shall be determined by using as the numerator the total number of months the parties were married while petitioner was employed by an employer participating in the Plan, and as the denominator the total number of months of petitioner's "years of service" (as defined by the Plan) accumulated under the Plan multiplied by 2. Petitioner and respondent were married on February 16, 1966 and separated on April 27, 1981 ..."

The terms of the QDRO explicitly are made subject to amendments to the Plan. [#39], AR 000271, ¶ 15(d).  The QDRO does not limit the retirement benefits subject to the QDRO only to benefits accrued by Mr. Schandel up to the time of the divestiture of AT&T.  The QDRO does not limit the retirement benefits subject to the QDRO only to benefits accrued by Mr. Schandel when working for a Bell System operating company. [#39], AR 00269 - 00271.

4

### C. Plan Division of Retirement Benefits Under the QDRO

When he retired in 2008, Mr. Schandel did not indicate on his Benefit Option Election Form that there was a QDRO which affected his retirement benefits. [#35], AR 00027. In 2011, Ms. Seibert initiated inquires regarding her right to a portion of the pension benefits of Mr. Seibert under the QDRO. [#39], AR 00250. Ultimately, the Qwest Pension Plan determined that under the QDRO, Ms. Seibert is entitled to a portion of each monthly pension benefit paid to Mr. Schandel. [#39], AR00252 - 00259. Applying the formula specified in the QDRO, in November 2011, the Plan determined that Ms. Seibert is entitled to payment of 501.58 dollars per month. [#39], AR 00252, 00256. The Plan immediately began to make that monthly payment to Ms. Seibert and to reduce the monthly payment to Mr. Schandel by the same amount.

### D. Appeal of Mr. Schandel

On January 23, 2012, Mr. Schandel filed a challenge to the calculation by the Plan of the benefit payable to Ms. Siebert. Mr. Schandel asserted that the calculation of the benefit to be paid to Ms. Siebert under the QDRO was not correct. In his challenge, and in this case, Mr. Schandel contends that paragraph 9.11 of the MPA limits the amount payable to Ms. Siebert. In much of the correspondence about payments to Ms. Seibert, she is referred to as an "alternate payee." According to Mr. Schandel,

> Section 9.11 [of the MPA] means that any QDRO that applies to the Bell Pension Plan should be limited to the percentage of time that the employee worked in the Bell System over the employee's total length of service, or by the time lived in the State that issued the QDRO over the total amount of time worked for the company, whichever is greater.

*Brief of plaintiff* [#30], p. 7. On this theory, Mr. Schandel asserts that "40% represents the amount of Mr. Schandel's pension 'obtained' from the Bell Pension Plan." [#37], AR 00181, 3rd bullet point. The calculation provided in the QDRO, Mr. Schandel contends,

5

applies only to that 40% of his total monthly pension benefit.

Section 9.11 of the MPA states:

Provisions Relating to Divorce of Covered Employee

    If a Former Interchange Company Pension Plan is obligated to pay (to a former spouse or the child or children of a covered employee, or the legal representative of any such person) all or a portion of future payments relating to a covered employee's pension benefit, in accordance with a valid court order which is a Qualified Domestic Relations Order under Section 206(d) of ERISA, as amended by the Retirement Equity Act of 1984 and as may be further amended from time to time, then the Hiring Interchange Company Pension Plan shall succeed to such obligation and honor it to the extent that it was a legally binding obligation of the Former Interchange Company Pension Plan; provided however, that, except as otherwise required by ERISA (including Section 206(d)), the Code or other applicable Federal law, **such obligation to which the Hiring Interchange Company Pension Plan succeeds under this Section 9.11 shall only apply to the greater of** (i) the portion of the covered employee's pension benefit, as of the time it ultimately commences to be paid in whole or in part either to the participant or to such other individual(s) specified in the court order, which bears the same relationship to such covered employee's total pension benefit as the percentage of such covered employee's term of employment which was attained as of the date the covered employee transferred to or became employed or reemployed by the Hiring Interchange Company bears to such covered employee's total term of employment, or (ii) the portion of the covered employee's pension benefit, as of the time it ultimately commences to be paid in whole or in part either to the participant or to such other individual(s) specified in the court order, which bears the same relationship to such covered employee's total pension benefit as the percentage of such covered employee's term of employment relating to periods of service within the state in which the court order was issued bears to such covered employee's total term of employment ...

[#36], AR 00120-00121 (emphasis added). Charitably, Mr. Schandel says in his brief that Section 9.11 of the MPA "leaves much to be desired in terms of clear meaning." *Id.*, p. 6.

The final decision of the CenturyLink Pension Plan on the appeal of Mr. Schandel was issued on August 16, 2012. The Century Link Employee Benefits Committee denied the appeal. [#37], AR 00168-00177. In its decision, the Plan described the MPA

6

and how the pension benefits of Mr. Schandel were transferred from company to company as Mr. Schandel moved from company to company. [#37], AR 00169. The Plan noted the terms of the QDRO and the terms of Section 9.11 of the MPA. [#37], AR 00170 - 00172. The Plan found that

> the MPA does not define, or have any effect on, how an employee's pension benefits are divided, or the related calculation thereof, under a QDRO. Any such argument would mean that the MPA unilaterally amended the formula for dividing Mr. Schandel's benefit under the existing QDRO which could not occur.

[#37], AR 00172.

The Plan went on to examine and apply the ratios specified in Section 9.11 of the MPA. [#37], AR 00173. Ultimately, the Plan concluded as follows:

> The benefit payable to Ms. Siebert was calculated correctly and consistent with the QDRO. Section 9.11 of the MPA has no effect on and does not alter the formula in the QDRO under which Mr. Schandel's pension benefit is divided between Mr. Schandel and Ms. Siebert. Section 9.11 solely operates to limit the extent to which the Qwest Pension Plan is obligated to honor the preexisting QDRO *but only if* the ratio of the benefit payable to Ms. Siebert to the total benefit payable to Mr. Schandel exceeds the greater of the ratios set forth in Section 9.11. Since the ratio of the benefit payable to Ms. Siebert to the total benefit payable to Mr. Schandel is *less* than the greater of the ratios set forth in Section 9.11, there is no limit on the extent to which the Qwest Pension Plan must honor the preexisting QDRO.

[#37], AR 00173 (emphasis in original).

In the paragraph quoted above, the Plan found that Section 9.11 of the MPA, on its own terms, is not operative in this case. Equally important, the Plan found also that "(e)ven if Section 9.11 were to be operative, it would operate only to limit the liability under the preexisting QDRO to which the Qwest Pension Plan succeeded but would not affect, in any way, the calculation of the benefit to which Ms. Siebert is entitled under the QDRO." [#37], AR 00175.

7

On these bases, the Plan denied the appeal of Mr. Schandel. Mr. Schandel appeals this decision to this court. He asks the court to re-calculate the benefit due to Ms. Siebert using the method he suggests. Using that calculation, Mr. Schandel contends the monthly benefit due to Ms. Siebert must be reduced from 501.58 dollars per month to 200.52 dollars per month. [#37], AR 00176.

### III.  STANDARD OF REVIEW

There is no dispute that the Qwest Pension Plan, now the CenturyLink Pension Plan, is a regulated by the Employee Retirement Income and Security Act (ERISA), 29 U.S.C. §§ 1001 - 1461. ERISA provides a detailed and comprehensive set of federal regulations governing the provision of benefits to employees by employers. Under 29 U.S.C. § 1132(a), part of ERISA, a plan beneficiary has the right to review of benefit denials and terminations in federal court . The statute does "not establish the standard of review for such decisions." *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 824-25 (10th Cir.1996).

However, in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court of the United States established the basic framework for determining the standard of review in ERISA cases that challenge the denial or termination of benefits. "(A) denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. If the plan provides for such discretion, then the proper standard of review is abuse of discretion. *Id*. In this case, the Plan provides that the Plan Administrator retains "full discretion and power to construe and interpret the

Plan . . . ." [#46], AR 00644. Thus, abuse of discretion is the standard of review applicable to the Plan decision at issue here.

Mr. Schandel contends a *de novo* standard of review is applicable. This is true, he asserts, because the dispute in this case is not about a term or condition of the Qwest Pension Plan. *Brief of plaintiff* [#30], p. 4. Rather, he asserts, this dispute requires an interpretation of the MPA, "which predates the Qwest Pension Plan. While the [MPA] impacts the Qwest Pension Plan, it neither was nor is a part of the Qwest Pension Plan." *Id.*

The factual premise of the position of Mr. Schandel is incorrect. In fact, the "Mandatory Portability Agreement, as amended, and all Interchange Agreements to which the Company is a party are hereby incorporated as if set forth fully in the Plan." *Qwest Pension Plan, Amended and Restated and Generally Effective January 1, 2008*, [#43], AR 00486 - [#48], AR 00836, at [#46], AR 00678. When the Plan interpreted the MPA in response to the claim of Mr. Schandel, the Plan was interpreting a provision of the Plan. Thus, the abuse of discretion standard of review is applicable. The arguments of Mr. Schandel to the contrary are not persuasive.

Under the abuse of discretion, or arbitrary and capricious, standard of review, "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[2]  **LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Insurance Plan**, 605 F.3d 789, 796 (10th Cir. 2010) (citation and internal quotation marks omitted). The decision of the Plan

---

[2] The United States Court of Appeals for the Tenth Circuit has concluded that, in the ERISA context, the arbitrary and capricious standard is equated with the abuse of discretion standard. There may be a semantic difference between these two terms but, at least in the ERISA context, there is no substantive difference. **Chambers v. Family Health Plan Corp.**, 100 F.3d 818, 825 n. 1 (10th Cir.1996).

9

administrator will be affirmed "so long as it is predicated on a reasoned basis." ***Adamson v. Unum Life Insurance Co. of America***, 455 F.3d 1209, 1212 (10th Cir. 2006). ***See also Kimber v. Thiokol Corp.***, 196 F.3d 1092, 1098 (10th Cir. 1999) (administrator's decision must be upheld "unless it is not grounded on *any* reasonable basis") (citations and internal quotation marks omitted; emphasis in original).

"Certain indicia of an arbitrary and capricious denial of benefits include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." ***Graham v. Hartford Life & Accident Insurance Co.***, 589 F.3d 1345, 1357 (10th Cir. 2009), ***cert. denied***, 130 S.Ct. 3356 (2010) (citation and internal quotation marks omitted). Substantial evidence is defined as "more than a scintilla but less than a preponderance." ***Sandoval v. Aetna Life & Casualty Insurance Co.***, 967 F.2d 377, 382 (10th Cir. 1992). Stated differently, substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker." ***Id.*** (citations and internal quotation marks omitted). Thus,

> [u]nder the arbitrary and capricious standard of review, [the] decision need not be the only logical decision nor even the best decision. Rather, the decision need only be sufficiently supported by facts known to [the plan] to counter a claim that the decision was arbitrary or capricious.

***Williams v. Metropolitan Life Insurance Co.***, 2011 WL 97137 at *3 (D. Colo. Jan. 11, 2011) (Blackburn, J.), ***aff'd***, 459 Fed. Appx. 719 (10th Cir. Feb. 7, 2012). The decision will be upheld unless it is not grounded on any reasonable basis. ***Kimber***, 196 F.3d at 1098. The reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness – even if on the low end." ***Id***. (quoting ***Vega v. National Life Ins. Serv., Inc.***, 188 F.3d 287, 297 (5th Cir. 1999)).

In this case, the administrative record provides all of the relevant facts, and there is no contention that the administrative record is incomplete or inaccurate. Thus, those undisputed and relevant facts are deemed established. The only remaining question is an evaluation of the decision of the Plan to award to Ms. Siebert 501.58 dollars per month as her proper share of the retirement benefit of Mr. Schandel. After this review is complete, either the plaintiffs or the defendants necessarily will be entitled to judgment as a matter of law.

## IV.  ANALYSIS

The interpretation of plan terms and calculations by the Plan in this case are eminently reasonable. Specifically, the interpretation by the Plan of Section 9.11 of the MPA, and its conclusion that this section has no application in this particular case, is reasonable.

First, the MPA expressly excludes a claim by a third party, such as Mr. Schandel, based on the terms of the MPA.

> This Agreement shall not provide third parties including any covered employee, with any remedy, cause, liability, reimbursement, claim of action or other right in excess of those existing without reference to this Agreement.

[#36], AR 00119. Setting Section 9.11 of the MPA aside, there is no dispute in this case that, applying the terms of the plan and the terms of the QDRO, the calculation of the Plan is correct. The sole basis of the claim for a different calculation asserted by Mr. Schandel is the terms of the MPA. However, the MPA bars him from asserting such a claim.

Second, even if Section 9.11 of the MPA could be the basis of a claim by Mr. Schandel, the interpretation of Section 9.11 adopted by the Plan is quite reasonable.

11

Case 1:12-cv-02800-REB-CBS Document 57 Filed 03/30/16 USDC Colorado Page 12 of 14

No doubt, Section 9.11 is poorly written. Still, the Plan provided a detailed and reasonable interpretation of this section in its final decision. The Plan examined and applied the ratios specified in Section 9.11. [#37], AR 00173. Ultimately, the Plan concluded:

> The benefit payable to Ms. Siebert was calculated correctly and consistent with the QDRO. Section 9.11 of the MPA has no effect on and does not alter the formula in the QDRO under which Mr. Schandel's pension benefit is divided between Mr. Schandel and Ms. Siebert. Setion 9.11 solely operates to limit the extent to which the Qwest Pension Plan is obligated to honor the preexisting QDRO *but only if* the ratio of the benefit payable to Ms. Siebert to the total benefit payable to Mr. Schandel exceeds the greater of the ratios set forth in Section 9.11. Since the ratio of the benefit payable to Ms. Siebert to the total benefit payable to Mr. Schandel is *less* thaan the greater of the ratios set forth in Section 9.11, there is no limit on the extent to which the Qwest Pension Plan must honor the preexisting QDRO.

[#37], AR 00173. I concur: the interpretation of Section 9.11 and calculations of the Plan, as reflected in its final decision, are reasonable.

Third, the Plan applied a reasonable interpretation of Section 9.11 and made a reasonable decision when it concluded that under no circumstances could Section 9.11 affect the benefit to which Ms. Siebert is entitled. "Even if Section 9.11 were to be operative, it would operate only to limit the liability under the preexisting QDRO to which the Qwest Pension Plan succeeded but would not affect, in any way, the calculation of the benefit to which Ms. Siebert is entitled under the QDRO." [#37], AR 00175.

There is substantial evidence to support this interpretation and decision. The plaintiffs have not come forward with either evidence or argument which undermines in any significant way the interpretation adopted by the Plan or the decision made by the Plan. The decision of the Plan is supported by substantial evidence and is based on a reasonable interpretation of terms by the Plan.

## V.  ATTORNEY FEES

Ms. Siebert and the Schandels both request an award of attorney fees. The provisions of 29 U.S.C. § 1132(g) permits a court, in its discretion, to award a reasonable attorney fee to either party in an ERISA action such as this case. When deciding whether to award attorney fees, a court should consider: "(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." ***Cardoza v. United of Omaha Life Ins. Co.***, 708 F.3d 1196, 1207 (10th Cir. 2013). "No single factor is dispositive and a court need not consider every factor in every case." ***Id***. Considering the circumstances of this case in the context of the foregoing factors, I decline to order an award of attorney fees.

## VI.  CONCLUSION & ORDERS

The decision of the defendant Qwest Pension Plan, now known as the CenturyLink Pension Plan, was reasonable and is supported by substantial evidence. The plaintiffs have not come forward with either evidence or argument which undermines in any significant way the interpretation adopted by the Plan or the decision made by the Plan.

**THEREFORE, IT IS ORDERED** as follows:

1. That the decision of the Qwest Pension Plan, now known as the CenturyLink Pension Plan, shown in the record of this case at [#37], AR 00168-00177, is affirmed;

2. That the requests by the parties for an award of attorney fees are denied;

3. That, claims for attorney fees aside, judgment shall enter in favor of the defendants, Darlene A. Siebert and the Qwest Pension Plan, and against the plaintiffs, Roger Schandel and Lori Schandel, on all claims asserted in **Plaintiffs' Brief In Support of Claim for Benefits** [#30];

4. That the defendants are awarded their costs to be taxed by the clerk of the court in the time and manner provided in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

5. That this case is closed.

Dated March 30, 2016, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge